**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| Pedro O., | No. 20-cv-2568-ECT-KMM |
| Petitioner, | |
| v. | **REPORT AND** |
| | **RECOMMENDATION** |
| Jeffrey A. Rosen, et al., | |
| Respondents. | |

This matter is before the Court on Pedro O.'s[1] Petition for Writ of Habeas Corpus brought under 28 U.S.C. § 2241. Pet., ECF 1. Mr. O asserts that he is currently being held in the custody of immigration authorities pending the completion of removal proceedings and his continued detention violates the Due Process Clause of the Fifth Amendment. He seeks immediate release from Kandiyohi County Jail, or in the alternative, asks the Court to hold a bond hearing or to direct Respondents to hold a bond hearing. Pet., Prayer for Relief ¶¶ 6–7. If the Court requires a bond hearing, Mr. O further requests that the government be required to bear the burden of proving, by clear and convincing evidence, that Mr. O is a danger to the community or a flight risk in order for his detention to lawfully continue. *Id.*, Prayer for Relief ¶ 7. In addition, at any bond hearing ordered by the Court, he also asks that Respondents be required to consider his ability to pay in setting any bond

---

[1]    Throughout this Report and Recommendation, the Court refers to the Petitioner as "Mr. O" or "Petitioner" based on a District of Minnesota policy regarding privacy concerns in immigration-related matters such as this.

for his release. *Id.* For the reasons that follow, the Court recommends that the Petition be granted in part.

## I.    Background

Mr. O is a Mexican native and citizen who has lived in the United States for twenty-four years. Pet. ¶ 1; Decl. of James L. Van der Vaart ("Van der Vaart Decl.") ¶ 4, ECF 13. On May 17, 2017, Woodbury Police arrested Mr. O for criminal sexual conduct. Van der Vaart Decl. ¶ 5. Shortly thereafter, immigration authorities lodged a detainer with the jail where Mr. O was being held. Van der Vaart Decl., Ex. 1 at 5–6. On May 19, 2017, Immigration and Customs Enforcement ("ICE") officials took custody of Mr. O after a probable-cause hold on the State charges expired, but ICE released Petitioner on bond at that time. *Id.* ¶¶ 6–7 & Ex. 1 at 1, 3, 5–6.

On September 27, 2017, Mr. O was charged by criminal complaint in Washington County with first-degree criminal sexual conduct under Minn. Stat. § 609.342(a)(1). Pet., Ex. H at 7–10. On August 23, 2018, the Washington County District Court found Mr. O was not competent to stand trial due to mental illness. *Id.*, Ex. H at 11–15. Mr. O was also civilly committed by the State of Minnesota in June 2018, and again in August 2018. *Id.* ¶¶ 35–36. Nearly a year after the second civil commitment, on September 16, 2019, the State court again found that Petitioner was not competent to stand trial. *Id.*, Ex. K at 4. Finally, on March 4, 2020, Mr. O was found competent to stand trial. He entered a guilty plea the same day. The plea agreement proposed a 172-month sentence with a stay of execution and credit for time served; a no-contact order with the victim; a requirement that Mr. O register as a predatory offender; and up to 25 years of supervised probation. *Id.*,

Ex. H at 16–19. On May 4, 2020, the Washington County Court imposed a sentence essentially adopting the plea agreement. *Id.*, Ex. H at 20–23. The same day the sentence was imposed, Mr. O was taken into custody by ICE officers. *Id.*, Ex. I at 2. He has been in immigration detention continuously since May 4, 2020.

On September 24, 2020, during Mr. O's deportation proceedings, an immigration judge ("IJ") granted his application for deferral of removal under the Convention Against Torture. *Id.*, Ex. L. On September 29, 2020, ICE appealed the IJ's decision to the Board of Immigration Appeals ("BIA"). *Id.*, Ex. M. At the time of this Court's March 9, 2021 hearing on the habeas petition, ICE's appeal to the BIA remained pending, though briefing before the BIA was complete in October 2020. Resp. to Pet. at 4, ECF 12.

When Mr. O filed his habeas petition on December 18, 2020, he had been in ICE custody for almost 7 months, and as of today that period of detention is 3 weeks shy of a full year. Throughout his immigration detention, Petitioner has been held in the Kandiyohi County Jail. Pet. ¶ 56. Mr. O has not received a bond hearing or any individualized determination of whether his continued detention is necessary to ensure the safety of the community or his availability for removal from the United States.

## II.   Legality of Continued Detention

The parties first dispute whether Mr. O's continued detention is permissible under the Due Process Clause of the Fifth Amendment. The Court concludes that it is not.

District courts have the power to grant writs of habeas corpus. 28 U.S.C. § 2241(a). This power includes jurisdiction to hear habeas challenges to immigration-related detention. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001). Though Congress has limited

judicial review of certain immigration-related detention decisions, *see* 8 U.S.C. § 1226(e), a person may nonetheless raise a constitutional challenge to the length of pre-removal immigration detention in a habeas corpus proceeding. *Demore v. Kim*, 538 U.S. 510, 517 (2003); *Zadvydas*, 533 U.S. at 688.

During the pendency of removal proceedings, "most aliens may be released on bond or paroled." *Zadvydas*, 533 U.S. at 683 (citing 8 U.S.C. § 1226(a)(2)). However, under 8 U.S.C. § 1226(c), the Attorney General is required to take into custody a noncitizen who has been convicted of a crime qualifying as an "aggravated felony." Mr. O falls into this category of persons subject to mandatory detention pending completion of removal proceedings.[2]

Though § 1226(c) requires Mr. O's detention, the Due Process Clause of the Fifth Amendment limits the government's power to detain an individual under the immigration laws. In *Demore*, the Supreme Court held that the mandatory detention authorized under 8 U.S.C. § 1226(c) is facially constitutional because the Court found that such detention typically only lasts for a "brief period" needed to conduct removal proceedings. 538 U.S. at 513, 528–31. However, *prolonged* detention pursuant to § 1226(c) presents due process concerns. *Id.* at 532–33 (Kennedy, J., concurring) (stating that an individualized

---

[2]     8 U.S.C. § 1226(c)(1)(B) (providing for mandatory detention of noncitizens convicted of certain crimes); *id.* § 1227(a)(2)(A)(iii) (providing for the deportation of noncitizens convicted of aggravated felonies); *id.* § 1101(a)(43)(A) (defining an aggravated felon as including "sexual abuse of a minor"). It is undisputed that Mr. O is subject to mandatory detention based on these statutory provisions. Pet. ¶¶ 46–47; Resp. at 7.

determination of whether a person's custody under § 1226(c) serves the purpose of the statute may be necessary "if the continued detention became unreasonable or unjustified" by virtue of its duration).

Since *Demore*, courts within this District, including this Court, have held that prolonged mandatory detention under § 1226(c), without an individualized determination that a detainee presents a risk of flight or a danger to the community, may violate the Due Process Clause of the Fifth Amendment. *See, e.g.*, *Bolus A.D. v. Secretary of Homeland Security*, No. 0:18-cv-1557 (WMW/KMM), Doc. No. 33 (D. Minn. Feb. 11, 2019) (report and recommendation concluding that an alien detained pursuant to § 1226(c) for over 13 months was entitled to a bond hearing), *R&R adopted in part by* 376 F. Supp. 3d 959 (D. Minn. 2019); *see also Liban M.J. v. Sec'y of Dep't of Homeland Sec.*, 367 F. Supp. 3d 959 (D. Minn. 2019); *Abshir H.A. v. Barr*, No. 19-cv-1033 (PAM/TNL), 2019 WL 3719414 (D. Minn. Aug. 7, 2019); *Omar M. v. Barr*, No. 18-cv-2646 (JNE/ECW), 2019 WL 3570790 (D. Minn. May 6, 2019), *R&R adopted by* 2019 WL 2755937 (D. Minn. July 2, 2019); *Tao J. v. Sec'y of Dep't of Homeland Sec.*, No. 18-cv-1845 (NEB/HB), 2019 WL 1923110 (D. Minn. Apr. 30, 2019); *Abdulkadir A. v. Sessions*, No. 18-cv-2353 (NEB/HB), 2018 WL 70483633 (D. Minn. Nov. 13, 2018), *R&R adopted by* 2019 WL 201761 (D. Minn. Jan. 15, 2019); *Jamal A. v. Whitaker*, 358 F. Supp. 3d 853 (D. Minn. 2019); *Mohamed v. Sec'y, Dep't of Homeland Sec.*, No. 17-cv-5055 (DWF/DTS), 2018 WL 2392205 (D. Minn. Mar. 26, 2018), *R&R adopted by* 2018 WL 2390132 (D. Minn. May 25, 2018); *Muse v. Sessions*, 409 F. Supp. 3d 707 (D. Minn. 2018). These decisions require

an examination of several factors to determine whether prolonged detention under § 1226(c) in any particular case runs afoul of the Constitution.

Respondents suggest that Mr. O's continued detention under § 1226(c) is constitutional regardless of its duration because (1) the statute's mandatory detention scheme was found facially constitutional in *Demore*; (2) the Supreme Court in *Jennings v. Rodriguez*, 138 S. Ct. 830 (2018), rejected an interpretation of § 1226(c) that required periodic bond hearings;[3] and (3) the policy justifying mandatory detention for certain removable immigrants does not change over time. Resp. at 8–12.[4] However, these same arguments have been repeatedly raised and rejected in similar cases. Respondents have presented no reason to revisit the conclusion—reached in decision after decision in this

---

[3]     Decisions recognizing due process limits on mandatory detention under § 1226(c) have properly distinguished the Supreme Court's holding in *Jennings*. *See, e.g.*, *Muse*, 409 F. Supp. 3d at 715. In *Jennings*, the Supreme Court rejected the Ninth Circuit's interpretation of § 1226(c), which read a reasonableness limitation, requiring periodic bond hearings every six months, into the statute based on the canon of constitutional avoidance. The Supreme Court held that § 1226(c)'s plain language authorized detention throughout removal proceedings without a bond hearing, so resort to canons of statutory construction to say that § 1226(c) required period hearings was improper. Instead, Congress's unambiguous text controlled. But the Supreme Court expressly left open the question whether prolonged detention would violate a person's due process rights. *Jennings*, 138 S. Ct. at 842, 851. That is the question confronted by the Court here.

[4]     Respondents also argue that the Eighth Circuit's decision in *Farass Ali v. Brott*, is "instructive regarding mandatory detention at issue in this case." Resp. at 12–13; *Farass Ali*, No. 19-1244, 2019 WL 1748712 (8th Cir. Apr. 16, 2019). The Court is not persuaded. Like the Supreme Court in *Jennings*, the *Farass Ali* court was faced with a question of statutory interpretation. It rejected the lower court's reliance on a canon of constitutional avoidance to read a reasonableness limitation into 8 U.S.C. § 1226(a), and remanded the case for further consideration of whether his continued detention violated the constitution. 2019 WL 1748712, at *3–4. *Farass Ali*, therefore, does not resolve or even particularly inform the constitutional question presented in this case.

6

District—that prolonged detention under § 1226(c) is subject to limits based on the Due Process Clause. *See Abdullahi J. v. Barr*, No. 19-cv-2998 (PAM/KMM), Doc. 25 at 11–12 (D. Minn. Mar. 2, 2020) (declining to reconsider the conclusion of numerous courts within the District of Minnesota that the Due Process Clause places limits on prolonged mandatory detention under § 1226(c)).

In line with this precdent, the Court will apply the multi-factor test adopted in *Muse* for determining whether an individual's § 1226(c) detention is consistent with due process. The following factors are relevant to this analysis:

> (1) the total length of detention to date; (2) the likely duration of future detention; (3) the conditions of detention; (4) delays of the removal proceedings caused by the detainee; (5) delays of the removal proceedings caused by the government; and (6) the likelihood that the removal proceedings will result in a final order of removal.

*Muse*, 409 F. Supp. 3d at 715.

At the hearing, Respondents criticized the multi-factor approach laid out in *Muse*. In Respondents' view, the analysis hinges only on the length of detention, and the other factors are largely irrelevant. It is true that "courts have described the first factor, which looks at the length of detention, as the most important." *Portillo v. Hott*, 322 F. Supp. 3d 698, 708 (E.D. Va. 2018). But this does not render the *Muse* test a multi-factor consideration in name only. The problem identified by Respondents—that other factors in the *Muse* test cut the same way in most cases—does not mean it is not a multi-variable analysis. Moreover, the fact that many cases have similar relevant facts is at least in part due to the government's own conduct. For example, the conditions-of-detention factor considers the degree to which an immigrant's confinement resembles criminal

confinement. In habeas cases like this one, this factor is consistently weighed against the government because it uniformly detains immigrants under § 1226(c) in county jails alongside those awaiting trial on criminal charges or serving criminal sentences. If the government elected to carry out § 1226(c) detention differently, the third factor identified in *Muse* may receive different weight. The Respondents' suggestion that the *Muse* test is nothing more than a consideration of the length of detention is not persuasive.

### *Length of Detention*

The length of Mr. O's detention in this case favors granting relief. He has been in custody since May 4, 2020. As of the date of this decision, he has been in custody for 347 days or 11 months and one week (as of April 16, 2021) without any individualized consideration of whether he poses a danger to the community or is a flight risk.

As noted in *Muse*, detentions for similar and even shorter periods "have been found unreasonable under the Due Process Clause." *Muse*, 409 F. Supp. 3d at 716 (citing *Sajous v. Decker*, No. 18-cv-2447, 2018 WL 2357266, at *1, *7 (S.D.N.Y. May 23, 2018) (eight months); *Jarpa v. Mumford*, 211 F. Supp. 3d 706, 710, 717 n.6 (D. Md. 2016) (ten months); *Gordon v. Shanahan*, No. 15-cv-261, 2015 WL 1176706, *3–4 (S.D.N.Y. March 13, 2015) (eight months)); *see also Graham v. Decker*, 20 Civ. 3168 (PAE), 2020 WL 3317728, at * 5 (S.D.N.Y. June 18, 2020) (ten months).

Respondents correctly point out that often longer periods of detention are at issue in cases such as this, but the Court disagrees with Respondents' contention that the length of detention here "does not weigh in favor of relief." Resp. at 19 (citing *German Santos v. Warden Pike County Corr. Facility*, 965 F.3d 203 (3d Cir. 2020) (concluding that a two-

and-a-half-year detention was unreasonable). There is no hard-and-fast rule that detention less than a certain duration is reasonable or that beyond that threshold will always be unreasonable. But the duration of average detentions characterized by the Supreme Court as "brief" in *Demore* supports this Court's conclusion that the 11 month detention at issue here is too long. In *Demore*, the Supreme Court was persuaded that mandatory detention under § 1226(c) is facially constitutional in large part because the majority of cases involve only a "brief period" of detention between 1.5 and 5 months, on average. 538 U.S. at 529 (relying on data suggesting that in 2003 § 1226(c) detention lasted for less than 90 days in the majority of cases, that removal proceedings were completed in 85% of cases in an average of 47 days, and that in the remaining 15% of cases where an appeal was taken, the appeal lasted an average of four months). Though there is reason to doubt the accuracy of the statistics provided to the *Demore* Court,[5] Mr. O's detention has already been more than double the length of detention that was considered "brief." Notwithstanding Respondents' suggestion to the contrary, 11 months is an unreasonable amount of time for an individual to be held in custody without an individualized determination of whether his detention is necessary to serve the government's legitimate interests.

---

[5]     *Jennings*, 138 S. Ct. at 869 (Breyer, J., dissenting) (explaining that the statistics the Supreme Court relied on in *Demore* were incorrect and that "[d]etention normally lasts twice as long as the Government then said it did"). And regardless of whether the statistics proffered to the *Demore* Court were correct at the time, courts have begun to note the increase in the average length of immigration detention. *See, e.g.*, *Hernandez-Lara v. Immigr. & Customs Enf't, Acting Dir.*, No. 19-CV-394-LM, 2019 WL 3340697, at *7 (D.N.H. July 25, 2019) ("In fact, the average time aliens spend in detention during the pendency of removal proceedings has increased by at least ten-fold.").

For these reasons, the first factor weighs in favor of granting Mr. O's request for a bond hearing.

### *Likely Duration of Future Detention*

The likely duration of Mr. O's future detention also weighs in favor of granting habeas relief. The government's appeal of the immigration judge's decision that Mr. O should be released remains pending at the BIA. The government cannot remove Mr. O from the United States unless that appeal is resolved in its favor, and it will not release Mr. O while the appeal remains pending. Even if Mr. O ultimately prevails on the government's BIA appeal, it is likely that a resolution of his immigration proceedings could take several more months. Such additional detention without an individualized consideration of the confinement's necessity is unreasonable. This factor weighs in favor of granting Mr. O's request for habeas relief.

### *Conditions of Detention*

The third factor also weighs in favor of Mr. O's habeas petition. As noted above, the Court considers whether the conditions of Mr. O's detention resemble "penal confinement"; the more they do, "the stronger his argument that he is entitled to a bond hearing." *Muse*, 409 F. Supp. 3d at 717 (citing *Chavez-Alvarez v. Warden York Cty. Prison*, 783 F.3d 469, 478 (3d Cir. 2015)). "As the length of the detention grows, the weight given to this aspect of [Mr. O's] detention increases." *Id.* (internal quotation marks and alterations omitted). Mr. O has been detained in a county jail along with individuals serving criminal sentences and awaiting criminal trials for over ten months. The Respondents "question this factor's relevancy to a proper due process analysis," but they do not say why.

Resp. at 20. Locking a person up in penal confinement is precisely the kind of consideration that raises due process concerns; indeed, it is one of the greatest impositions on individual liberty that our society permits. And detention resembling criminal punishment entitles a person to greater procedural protections. The Respondents do agree, however, that Mr. O has been detained in a criminal correctional facility throughout his confinement. Because Mr. O's detention is indistinguishable from penal confinement, this factor weighs heavily in his favor given the length of his detention.[6]

### *Delays Caused by Mr. O*

The fourth factor—whether delays of the removal proceedings have been caused by Mr. O—also weighs in favor of granting relief. Mr. O raised a legitimate defense to his removal, as evidenced by the fact that the immigration judge granted his request to avoid removal under the CAT. However, this factor does not hold the additional time litigating "avenues of relief that the law makes available to him" against an immigration detainee. *Ly v. Hansen*, 351 F.3d 263, 272 (6th Cir. 2003). The record here shows that Mr. O has not engaged in any dilatory tactics or taken any improper or obstructive steps to thwart either a final decision in his case or his removal, and the government does not suggest otherwise.

---

[6]    Mr. O's petition and supporting materials show how the conditions of his detention in Kadiyohi County jail impact his ability to obtain necessary mental health treatment. However, at the hearing, his counsel confirmed that he is not asking the Court to consider these matters as relevant to the due process inquiry. Therefore, the Court has limited its analysis to the fact that Mr. O's confinement in a criminal correctional facility is indistinguishable from penal detention. Given Mr. O's concession, the Court need not decide whether considerations like those raised in his petition could ever be relevant to a due process analysis.

*Delays Caused by the Government*

The Court next considers delays of the removal proceedings caused by the government. "'Continued detention will also appear more unreasonable when the delay in proceedings was caused by the immigration court or other non-ICE government officials.'" *Muse*, 409 F. Supp. 3d at 717–18 (quoting *Sajous*, 2018 WL 2357266, at *11). Here, there is no evidence that the government has engaged in dilatory tactics and Mr. O does not argue that it has. Accordingly, this factor does not weigh in favor of Mr. O's petition.

The Respondents suggest that the Court should largely eschew the *Muse* factors and, instead, focus only on whether the government has acted unreasonably. Resp. at 18–19 (advocating for denial of habeas relief where "the case is proceeding efficiently through the immigration courts, and the government has not caused unreasonable delay"). Though phrased differently, this argument is akin to a suggestion that habeas relief may only be available if the government has acted in bad faith, regardless of the length of detention at issue. The Court finds this argument as unavailing now as it was when the government relied on it in *Muse*. 409 F. Supp. 3d at 713–15 (rejecting the government's argument that due process places no limitation on the length of detention under § 1226(c) where the government acts in good faith based on the reasoning of *Demore* and *Zadvydas*). In fact, in an Order addressing the petitioner's request for attorney's fees under the Equal Access to Justice Act, the *Muse* court found that such a position was not substantially justified. *Muse v. Barr* ("*Muse II*"), No. 18-CV-0054 (PJS/LIB), 2019 WL 4254676, at *2–4 (D. Minn. Sept. 9, 2019).

12

> In sum, the government's position—that, as long as the government does not act in bad faith, an alien detained under § 1226(c) is *never* entitled to a bond hearing, no matter how long he is detained—was not substantially justified. That position has not been accepted by a single court, and it cannot be squared with *Jennings* and *Zadvydas*.

*Id.* at *3. This rationale did not justify the government's opposition to the petition in *Muse*, and it does not justify continued denial of a bond hearing for Mr. O. Moreover, the Court notes that the test applied in *Muse* already takes into account whether the government's conduct has been dilatory or has otherwise unnecessarily prolonged the individual's detention. Where it has not, courts do not hold that factor against the government. *See, e.g.*, *German Santos v. Warden Pike Cty. Corr. Fac.*, 965 F.3d 203, 212 (3d Cir. 2020) (explaining that the government's "alleged errors" in considering the petitioner's underlying conviction an aggravated felony and requiring remand to the BIA for further consideration "are not the kind of careless or bad-faith mishaps that we hold against the Government"). The Court does not weigh the government's conduct in Mr. O's case against it, but strongly disagrees with the suggestion that, in the absence of misconduct by any government actor, due process is satisfied.

### Likelihood of a Final Order of Removal

The last factor is the likelihood that the removal proceedings will result in a final order of removal. The Court finds that this factor weighs neither in favor of nor against Mr. O's request for habeas relief. The fact that Mr. O obtained a favorable decision from the immigration judge suggests that he could very well prevail on the government's appeal to the BIA. In that event, a removal order would not be forthcoming, and Mr. O's detention would be even less justified without some individualized consideration of dangerousness

or flight risk. However, the record before the Court provides no firm basis on which to predict the outcome of the government's BIA appeal, and the Court would likely be getting in over its head were it to attempt to do so. Accordingly, the Court will not endeavor to determine whether Mr. O is likely to be deported at the conclusion of removal proceedings.

### *Conclusion*

Based on the foregoing, the balance of the multi-factor test leans in Mr. O's favor and he should receive a bond hearing. *See Muse*, 409 F. Supp. 3d at 718 (requiring the immigration judge to conduct a bond hearing where the factors weighed in the petitioner's favor). Accordingly, the Court will recommend that he receive a bond hearing within 21 days of any Order adopting this Report and Recommendation.

In the petition, Mr. O seeks an order requiring his immediate release or, alternatively, that any bond hearing be held by the District of Minnesota rather than an immigration judge. The Court declines to recommend granting either of these requests. With respect to his request for immediate release, the Court notes that the remedy commonly adopted in cases like this one is an individualized bond hearing to ensure that any continued detention serves the purposes for which custody is required under § 1226(c)—protection of the public and ensuring a person will be available for removal. *See, e.g.*, *Muse*, 409 F. Supp. 3d at 718 (concluding that an individualized bond hearing would "protect both Muse's rights under the Due Process Clause and the government's legitimate interest in detaining a removable alien when such detention is necessary to serve the purposes of § 1226(c)"). This is consistent with Justice Kennedy's concurrence in *Demore*, which suggested that an individualized determination of flight risk and danger

14

may be necessary "if the continued detention became unreasonable or unjustified." *Demore*, 538 U.S. at 531 (Kennedy, J., concurring); *see also Clerveaux v. Searls*, 397 F. Supp. 3d 299, 308 n.3 (W.D.N.Y. 2019) (explaining that in a procedural due process challenge to continued detention the court "considers only whether—seventeen months into Clerveaux's detention—the government must finally demonstrate to someone that there is some evidence that Clerveaux's detention serves some purpose"). Although the Court does not suggest that an order for immediate release could never be the appropriate habeas remedy for unconstitutionally prolonged detention under § 1226(c), such a remedy is not required in this case. Accordingly, the Court declines to recommend Mr. O's immediate release at this time, provided that the government complies with the recommendation that a bond hearing be held promptly.

The Court similarly concludes that, at this time, the proper forum for Mr. O's bond hearing is before an immigration judge rather than in this Court. Cases where habeas courts have addressed the issue are either distinguishable from this one, *see Leslie v. Holder*, 865 F. Supp. 2d 627 (M.D. Pa. 2012) (concluding that the court was obligated to conduct the bond hearing itself based on the law-of-the-case doctrine and the mandate from the Third Circuit Court of Appeals), or they deal only with the courts' power to hold such a hearing, rather than grappling with the question of the proper forum for the hearing to occur, *see Madrane v. Hogan*, 520 F. Supp. 2d 654, 667–68 (M.D. Pa. 2007) (discussing the government's argument that the habeas court lacked the authority to hold a hearing to determine dangerousness and risk of flight); *D'Allessandro v. Mukasey*, No. 08-914, 2009 WL 799957, at *1–2 (W.D.N.Y. Mar. 25, 2009) (addressing the government argument that

the court lacked authority "to entertain a bail application"). Assuming that this Court has the power to hold the bond hearing itself,[7] these cases provide little support for deciding to do so under the specific circumstances of this case. Moreover, the Court notes that it has not been shown that an immigration judge assigned to Mr. O's case would be unable to make an unbiased decision regarding dangerous or risk of flight. Indeed, the immigration judge assigned to Mr. O's administrative proceeding already ruled in his favor on his CAT claim, suggesting that the immigration judge is not, in fact, biased against him. Accordingly, the Court declines to recommend that the individualized bond hearing for Mr. O be conducted by the Court.

## III.    Bond Hearing Procedures

Mr. O finally argues that at any bond hearing, the government should bear the burden of proof and that his continued detention should not be authorized unless the government presents clear and convincing evidence of dangerousness or a flight risk. Pet. ¶¶ 64, 71–90. The Respondents argue that the procedures in place in immigration court are constitutionally valid and that Mr. O has not alleged a current due process violation that is traceable to the assignment of the burden of proof. Resp. at 21–38.

Having found that Mr. O is entitled to a bond hearing, the Court finds that due process requires the government to justify detaining an individual for over ten months pursuant to § 1226(c). The Court recommends that at Mr. O's bond hearing, the

---

[7]    The Respondents contest that the Court has such authority, Resp. at 38–39, but the Court need not decide this issue because it concludes that the proper forum for a bond hearing under the circumstances is before an immigration judge.

government should be required to bear the burden to prove, by clear and convincing evidence, that Mr. O's continued detention is necessary to protect the public or prevent the risk of flight.

### Addressing the Burden Issue

It is true that in other cases similar to this one, both this Court and others within the District of Minnesota have hesitated to address questions about the burden and quantum of proof. *See, e.g.*, *Abdullahi J. v. Barr*, No. 19-cv-2998 (PAM/KMM), Doc. 25 at 17 (Mar. 2, 2020); *Bolus A.D.*, 376 F. Supp. 3d 959, 963 (D. Minn. 2019); *Muse*, 409 F. Supp. 3d at 718. However, for three reasons the Court now recommends that the burden of proof be placed on the government.

First, requiring Mr. O to first present his argument that due process requires the government to bear the burden of proving dangerousness and flight risk to the Immigration Judge at his bond hearing would be an exercise in futility. *See Omar M. v. Garland*, Case No. 20-CV-1784 (NEB/BRT), Doc. No. 27 at 15–16 (D. Minn. Mar. 29, 2021) (reasoning that shifting the burden to the government "avoids the exercise in futility that has been recurring over the last number of years in this District" and noting that "if this Court punts again, the IJ will again allocate the burden to O.M."). In part, the courts that have hesitated to address the burden issue have reasoned that the immigration judges should be permitted to decide the issue in the first instance. *See, e.g.*, *Bolus A.D.*, 376 F. Supp. 3d at 963; *Muse*, 409 F. Supp. 3d at 718. This reflected a deference to the responsible immigration authorities within the Executive Branch, inviting them to explore an important constitutional issue before the federal court weighed in. *Bolus A.D.*, 376 F. Supp. 3d at 963

("The Court is not persuaded that due process requires this Court prospectively to order an immigration judge to adhere to a specific standard of proof at a bond hearing."). However, it has now become clear that immigration judges will not consider a detainee's claim that due process demands that the government bear a heightened burden at a bond hearing ordered by the Court. Indeed, the record in this case reveals that immigration judges believe themselves prohibited from considering the issue. Pet. ¶ 86, Ex. O at 3 & n.2 (citing, *inter alia*, *Matter of Guerra*, 24 I&N Dec. 37, 40 (BIA 2006), and 8 C.F.R. § 1236.1(c)(3)).

As a result, it is a foregone conclusion that if Mr. O were to ask the immigration judge to properly allocate the burden in accordance with the Constitution, the immigration judge will place the burden on Mr. O, requiring him to prove that release would neither endanger the public nor risk his nonappearance for removal in order to be let out of the county jail on bond; the judge will not even consider whether doing so violates the Due Process Clause. *Id.*, Ex. O at 3 n.2 ("[I]n the absence of an explicit directive from the United States District Court Judge reversing the burden, the Court will apply the burden of proof set forth in 8 C.F.R. § 1236.1(c)(3) and binding BIA precedent."); *Id.*, Ex. P at 3 (immigration judge discussion regarding burden of proof at the bond hearing for a habeas petitioner whose § 1226(c) detention was deemed unconstitutional). This reality means that the courts of this District are the only avenue where this important constitutional question can be addressed. *Cf. Joseph v. Decker*, No. 18-cv-2640 (RA), 2018 WL 6075067, at *5–7 (S.D.N.Y. Nov. 21, 2018) (rejecting the government's request for a dismissal of a habeas petition challenging, in part, the allocation of the burden of proof at a supplemental bond

hearing under 8 U.S.C. § 1226(a) because raising the issue to the immigration judge or the BIA would have been futile).

Second, the majority of courts across the country that have considered due process challenges to prolonged § 1226(c) detention have not only addressed the burden-of-proof issue, but have concluded that the government must bear the burden in a bond hearing for a noncitizen whose mandatory detention has been deemed unconstitutionally prolonged. *See Jimenez v. Wolf*, No. 19-CV-07996-NC, 2020 WL 510347, at *4 (N.D. Cal. Jan. 30, 2020); *Favi v. Kolitwenzew*, No. 20-cv-2087, 2020 WL 2114566, at *8 (C.D. Ill. May 4, 2020); *Duncan v. Kavanagh*, 439 F. Supp. 3d 576, 590 (D. Md. 2020); *Tracey M.S. v. Decker*, No. 20-cv-5146 (ES), 2020 WL 2316559, at *7 (D.N.J. May 11, 2020);[8] *Clarke v. Doll*, 481 F. Supp. 3d 394 (M.D. Pa. Aug. 2020); *Yagao v. Figueroa*, No. 17-cv-2224-AJB-MDD, 2019 WL 1429582, at *4 (S.D. Cal. Mar. 29, 2019); *Singh v. Choate*, No. 19-cv-00909-KLM, 2019 WL 3943960, at *7 (D. Colo. Aug. 21, 2019); *Reid v. Donelan*, 390 F. Supp. 3d 201, 224 (D. Mass. 2019);[9] *Hernandez-Lara v. Immigration and Customs Enf't*, No. 19-cv-394-LM, 2019 WL 3340697, at *4 (D.N.H. July 25, 2019) (noting, in a case addressing burden allocation in a bond hearing under 8 U.S.C. § 1226(a), that the "overwhelming majority of district courts" that have considered detention under § 1226(c)

---

[8]    The *Tracey M.S.* court did not specify the quantum of proof required, but placed the burden of proof on the government.

[9]    The *Reid* court found the government must prove dangerousness by clear and convincing evidence, but risk of flight by a preponderance, distinguishing between the two relevant considerations. The court also noted that under the Bail Reform Act of 1984, the government must show a defendant's risk of flight by a preponderance of the evidence to justify detention. 390 F. Supp. 3d at 209–10, 224–25.

have placed the burden on the government to prove danger and flight risk by clear and convincing evidence); *Rachinskiy v. Barr*, 422 F. Supp. 3d 789, 800 (W.D.N.Y. 2019); *Doe v. Beth*, No. 18-cv-1672, 2019 WL 1923867, at \*4 (E.D. Wis. Apr. 30, 2019); *Graham v. Decker*, No. 20 CIV. 3168 (PAE), 2020 WL 3317728, at \*8 (S.D.N.Y. June 18, 2020); *Portillo v. Hott*, 322 F. Supp. 3d 698, 709 (E.D. Va. 2018).[10]

Indeed, of the federal district courts that have been asked to address the issue, this District's previous hesitancy to grapple with the question has rendered it an outlier.[11] Of the courts that Amicus notes have addressed the issue, the vast majority have found that due process requires the government justify continued detention by providing clear and convincing evidence of danger or risk of flight; one has found the burden belongs to the government, but split the evidentiary standard between the danger and flight inquiries, *see* note 9, *supra*; one has found that the burden should be placed on the government, but declined to specify a quantum of proof, *see* note 8, *supra*; and two have placed the burden on the noncitizen detainee, *J.N.C.G. v. Warden, Stewart Det. Ctr.*, No. 4:20-cv-62-MSH, 2020 WL 5046870, at \*7 (M.D. Ga. Aug. 26, 2020);[12] *Khan v. Whiddon*, No. 2:13-cv-638-

---

[10]     In less recent authority, the Central District of California held that the government should bear the burden of proof. *Franco-Gonzales v. Holder*, No. CV 10-02211 DMG DTBX, 2011 WL 5966657, at \*7 (C.D. Cal. Aug. 2, 2011).

[11]     *But see Maldonado-Velasquez v. Moniz*, 274 F. Supp. 3d 11, 13–14 (D. Mass. 2017) (declining to decide the merits of the petitioner's argument that the burden was allocated improperly at his bond hearing under § 1226(a)).

[12]     The *J.N.C.G.* court followed *Sopo v. United States Att'y Gen.*, 825 F.3d 1199, 1219–20 (11th Cir. 2016), which held that the detainee should bear the burden at a bond hearing required because § 1226(c) detention had become unreasonably prolonged. The Eleventh Circuit later vacated its decision in *Sopo* because Mr. Sopo was removed from the United

*(footnote continued on next page)*

FTM-29MRM, 2016 WL 4666513, at *7 (M.D. Fla. Sept. 7, 2016). The government points to no decisions from outside of the District where a Court has declined to consider the question.

In addition to this strong majority of district courts, the Third Circuit Court of Appeals recently addressed the burden issue in a case where the petitioner had been detained under § 1226(c) without a bond hearing. *German Santos v. Warden Pike Cty. Corr. Fac.*, 965 F.3d 203, 213–14 (3d Cir. 2020). And, very recently, a court in this District has joined the chorus, holding that the government should bear the burden of proof in a second bond hearing for man being held in a very extended period of § 1226(c) detention. *Omar M. v. Garland*, Civil No. 20-CV-1784 (NEB/BRT), Doc. No. 27 (D. Minn. Mar. 29, 2021). Resolving the issue of which party should bear the burden of proof at the bond hearing would further align this court with the majority of district courts to have considered the issue and the recent persuasive decision from the Third Circuit.

Finally, pragmatic considerations strongly support this Court's view that the burden issue should be addressed now. The Court has found that Mr. O's continued detention of nearly a year without a bond hearing violates the Due Process Clause of the Fifth Amendment. If that recommendation is adopted and a bond hearing is ultimately ordered but the burden of proof issue is not addressed, the burden will be placed on Mr. O at such a bond hearing. If the IJ's bond decision goes against Mr. O, it may take many more months

---

States while his request for panel rehearing was stayed in light of the *Jennings* decision. 890 F.3d 952 (11th Cir. 2018).

before he could raise burden-of-proof issue again, even if he files a second habeas petition without delay. Mr. O would be required to file a new habeas petition arguing that the burden of proof was improperly allocated, a procedural outcome that is certain to occur. Before such a follow-on habeas proceeding could be resolved, Mr. O's detention would have been prolonged even further without the government ever having demonstrated in any forum that his detention is necessary. This is both inefficient and risks extending an unreasonably long period of detention.

Two cases from this District demonstrate the problem of requiring a petitioner to go through a lengthy detention to have his or her constitutional claim regarding the burden of proof considered. In *Omar M. v. Barr*, Civ. No. 20-1784 (NEB/BRT), 2020 WL 7383573 (D. Minn. Dec. 16, 2020), at the time of the petitioner's post-habeas bond hearing, where the burden of proof was placed on the petitioner, he had been detained for over two years. *Id.*, 2020 WL 7383573, at *3. By the time of the Magistrate Judge's report and recommendation on his second habeas petition, he had been detained for over three and a half years. *Id.* at *8. At the time the District Court ultimately decided that a new bond hearing must be held and the government must bear the burden of showing dangerousness or risk of flight by clear and convincing evidence, the total length of detention had approached four years. *Omar M. v. Garland*, Civil No. 20-CV-1784 (NEB/BRT), Doc. No. 27 (D. Minn. Mar. 29, 2021). Similarly, in *Tua Mene Lebie B. v. Barr*, No. 20-cv-1782 (ECT/LIB), Doc. No. 1 (D. Minn. Aug. 14, 2020), the petitioner filed a second habeas petition following after he received a court-ordered bond hearing at which the immigration judge placed the burden on the petitioner. At the time the second petition was filed, the

petitioner had already been in custody for over two and a half years. *Id.*, Doc. 1 ¶ 4 (noting that detention had lasted 984 days, or more than 32 months). Mr. Lebie B's detention has now exceeded three years and his second petition is currently awaiting a decision.

As noted above, deferring on the question of the burden of proof does not achieve the purpose of funneling serious consideration of that issue through the Executive Branch in the first instance. The *Omar M.* and *Lebie B.* cases not only illustrate that reality, they also show that the individual's confinement can easily go on for many months or even years while the bond-hearing process and a subsequent habeas proceeding play out. During that entire period of detention, the government would have never been required to demonstrate that the detention of the individual actually served the purposes for which § 1226(c) was enacted. Against this reality, it is easy to see why the majority of courts to consider this issue address it themselves, rather than requiring the petitioner to go through a flawed bond hearing and the sometimes lengthy process it can take to resolve a new habeas proceeding.

For these reasons, the Court concludes that it is appropriate to resolve the question of the burden of proof at this stage rather than deferring the issue until after a bond-hearing at which the burden of proof would certainly be placed on Mr. O.

### *Allocating the Burden and the Appropriate Quantum of Proof*

Having found that the Court should not accept the Respondents' invitation to duck the issue of who should bear the burden of proof and what burden of persuasion must be met, the Court concludes that the burden should, indeed, be placed on the government. Further, the Court concludes that the government should be required to prove by clear and

convincing evidence that Mr. O's release would present a danger to the community or a risk of nonappearance.

"As a general matter, when restriction of individual liberty has triggered due process concerns, a heightened burden of proof is placed on the State to justify continued detention." *Jarpa v. Mumford*, 211 F. Supp. 3d 706, 721 (D. Md. 2016) (cleaned up). The *Jarpa* court noted the regularity with which the Supreme Court has rejected civil commitment schemes placing the burden of proof on an individual. *Id.* (collecting cases). Doing so ensures procedural protections for the weightiest of an individual's liberty interests while accounting for the government's interest in detaining individuals where detention is justified. *See id.* ("[W]here detention is constitutionally permissible, it is only because adequate procedural protections ensure that the government's asserted justification for physical confinement outweighs the individual's constitutionally protected interest in avoiding physical restraint.") (cleaned up).

Applying a similar rationale, on July 7, 2020 the Third Circuit concluded that at a post-habeas bond hearing required by due process, the government bears the burden of justifying continued detention under § 1226(c) by clear and convincing evidence. *German Santos v. Warden Pike County Corr. Fac.*, 965 F.3d 203, 213–14 (3d Cir. 2020). The *German Santos* court explained that "[w]hen the Government seeks to take more than just money from a party, we typically hold the Government to a standard of proof higher than a preponderance of the evidence." *Id.* at 213. This allocates the risk of error between the parties appropriately given the individual's "more substantial" interest in freedom from

physical restraint. *Id.* at 214 ("Because the alien's potential loss of liberty is so severe, we reasoned, he should not have to share the risk of error equally.").

Like the *German Santos* court, and the vast majority of other courts that have addressed this issue, this Court concludes that because the civil detention authorized by § 1226(c) deprives an individual like Mr. O of his substantial liberty interest, subjecting the government to a heightened burden of proof strikes an appropriate balance between that interest and the government's interest in protecting the community and efficacy of removal proceedings. *See also Omar M.*, Case No. 20-CV-1784 (NEB/BRT), Doc. No. 27 (D. Minn. Mar. 29, 2021) (concluding that the government must bear the burden of proof and demonstrate dangerousness and risk of flight by clear and convincing evidence where the IJ placed the burden on the detainee at a post-habeas bond hearing).

The government's arguments to the contrary do not change this result. For example, *Jennings* does not foreclose such an allocation of the burden because both the majority and dissenting opinions "were focused on whether the statutes required bond hearings" as a matter of statutory interpretation, leaving unanswered any questions regarding "the appropriate procedures consistent with due process." *Hernandez v. Decker*, No. 18-cv-5026 (ALC), 2018 WL 3579108, at *11 (S.D.N.Y. July 25, 2018).

Similarly, the Respondents' suggestion that the Court is required under *Chevron, USA, Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 842 (1984), to defer to the BIA's interpretation of where the burden lies is unavailing. Section 1226(c) says nothing about allocation of the burden at a bond hearing. This is not surprising, since the statute provides for mandatory detention and Congress created no proceedings for situations, like

here, where a hearing is required by due process because detention has become unconstitutionally prolonged. The BIA interpretation to which the government directs the Court's attention involves a different statute—8 U.S.C. § 1226(a)—which also does not specify an allocation of the burden. In two opinions, the BIA determined that an allegedly removable noncitizen bears the burden of proof in a bond hearing under § 1226(a), based on the language of 8 C.F.R. § 236.1(c)(8). *See In re Guerra*, 24 I. & N. Dec. 37 (BIA 2006); *In re Adeniji*, 22 I. & N. Dec. 1102, 1116 (BIA 1999). That regulation does not actually govern § 1226(a) bond hearings either; rather, it sets the standard to be applied by immigration officers charged with issuing arrest warrants. 8 C.F.R. § 236.1(c)(8) (requiring the allegedly removable noncitizen to "demonstrate to the satisfaction of the officer" that he is neither dangerous nor a flight risk in order to secure release). Nevertheless, the BIA determined in *Guerra* and *Adeniji* that it was reasonable to resort to this regulation to require the noncitizen to bear the burden in a bond hearing under § 1226(a).

The government spends several pages of its brief arguing that the BIA's conclusion that the regulation's allocation of the burden during bond hearings under § 1226(a) is a reasonable interpretation of the statute. Resp. at 22–26. But, as other courts have noted, whether or not the BIA's interpretation of a statute or regulation is reasonable does not control the due process inquiry. *See Pensamiento v. McDonald*, 315 F. Supp. 3d 684, 693 (D. Mass. 2018) ("Regardless of whether or not *Chevron* deference applies to the BIA's interpretation of [§ 1226(a)], the issue before the Court is whether the Constitution requires the government to bear the burden of proof in § 1226(a) bond hearings. A *Chevron* argument about statutory interpretation does not change the constitutional analysis."). Put

differently, the issue here is not whether § 1226's silence on allocation of the burden allows the BIA to pick between two reasonable alternatives. Rather, the question is whether assigning that burden to the alien in a bond hearing comports with the constitutional requirement that all persons receive due process of law. For the reasons discussed above, the Court concludes that it does not.

### Ability to Pay

Finally, Mr. O asks the Court to require that the immigration judge at his bond hearing take into account his ability to pay in setting bond for his release. Pet. ¶¶ 64, 72, 88, 94; *Id.* at 35, Prayer for Relief ¶ 7. The Respondents do not address this request in their response to the petition.

Some courts have explicitly directed the immigration judge holding a bond hearing for a person detained for an unreasonably long period to consider the noncitizen's ability to pay in determining bail as well as "alternative conditions of release in setting bond." *Graham*, 2020 WL 3317728, at *8 (noting that courts in the Southern District of New York have "consistently" required consideration of the ability to pay and other conditions); *Gomes Herbert v. Decker*, 19-cv-760 (JPO), 2019 WL 1434272, at *4 (S.D.N.Y. Apr. 1, 2019); *Hernandez v. Decker*, 18-cv-5026 (ALC), 2018 WL 3579108, at *12 (S.D.N.Y. July 25, 2018) (concluding, based on Second Circuit precedent, that the "a bond determination that does not include consideration of financial circumstances and alternative release conditions is unlikely to result in a bond amount that is reasonably related to the government's legitimate interests"). However, the *Hernandez* court also noted that

"consideration of ability to pay and alternatives to detention appears to be compelled by BIA case law." 2018 WL 3579108, at *12.

The Court agrees that a bond decision that does not take into account a person's financial circumstances would be, to say the least least, constitutionally suspect. However, unlike the issue of the burden and quantum of proof, Mr. O has not shown that it would be futile to require him to raise this issue with the immigration judge. Accordingly, the Court declines to recommend that an Order requiring a bond hearing in this matter include a provision that necessitates consideration of Petitioner's ability to pay.

## Recommendation

Based on the foregoing, the Court makes the following recommendation:

1. The Petition should be **GRANTED IN PART** and **DENIED IN PART**.

2. Mr. O's request for immediate release and that any bond hearing should be conducted in this Court should be denied. The Court should also decline to require consideration of Mr. O's ability to pay at a bond hearing before the immigration judge because BIA precedent already demands financial considerations be taken into account.

3. Mr. O should receive an individualized bond hearing before an immigration judge within 21 days of any Order adopting this Report and Recommendation. If the government does not hold an individualized bond

hearing within 30 days of an Order adopting this Report and Recommendation, then Mr. O should be released.

4. At the bond hearing, the parties should be allowed to present evidence and argument concerning whether Mr. O is a danger to the community and whether he is likely to flee if he is not detained.

5. At the hearing, the immigration judge should be required to place the burden of proof on the government, and continued detention should only be authorized if the government meets its burden with clear and convincing evidence.

Date: April 16, 2021

 *s/Katherine Menendez*
Katherine Menendez
United States Magistrate Judge

## NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set for in LR 72.2(c).

**Under Advisement Date:** This Report and Recommendation will be considered under advisement 14 days from the date of its filing. If timely objections are filed, this Report and Recommendation will be considered under advisement from the earlier of: (1) 14 days after the objections are filed; or (2) from the date a timely response is filed.