# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Pedro O., | File No. 20-cv-2568 (ECT/KMM) |
| Petitioner, | |
| v. | |
| Merrick B. Garland, Attorney General; Alejandro Mayorkas, Secretary, Department of Homeland Security; Tae D. Johnson, Acting Director, Immigration and Customs Enforcement; Marcos Charles, Director, St. Paul Field Office Immigration and Customs Enforcement; and Eric Holien, Sheriff, Kandiyohi County, | **OPINION AND ORDER** |
| Respondents. | |

Benjamin Casper Sanchez and Nadia Anguiano-Wehde (Supervising Attorneys) and Ellie Soskin and John Weber (Law Student Attorneys), James H. Binger Center for New Americans, University of Minnesota Law School, Minneapolis, MN; Paul A. Dimick and Teresa Nelson, American Civil Liberties Union of Minnesota, Minneapolis, MN; Mary Georgevich, Immigrant Law Center of Minnesota, St. Paul, MN; John Bruning, The Advocates for Human Rights, Minneapolis, MN; and Michael D. Reif and Rajin S. Olson, Robins Kaplan LLP, Minneapolis, MN, for Petitioner Pedro O.

Ana H. Voss and Ann M. Bildtsen, United States Attorney's Office, Minneapolis, MN, for Respondents.

Anne E. Carlson, Justin H. Perl, Kristen Ann Hathaway, and Nathaniel Gier, Mid-Minnesota Legal Aid, Immigration Law Project, Minneapolis, MN; and Jonah Eaton, Nationalities Service Center, Philadelphia, PA, for Amici Mid-Minnesota Legal Aid, Nationalities Service Center, and American Immigration Lawyers Association.

For more than a year, Pedro O., a citizen of Mexico, has been detained in the Kandiyohi County Jail while he waits for the conclusion of his removal proceedings. He has not received an individualized bond hearing. In a petition for a writ of habeas corpus,

he argues that his prolonged detention violates the Due Process Clause of the Fifth Amendment to the U.S. Constitution. Pet. ¶¶ 49–64 [ECF No. 1]. He seeks immediate release or, in the alternative, a bond hearing. *Id.* ¶ 87 and p. 35. The Government vigorously opposed the petition. ECF No. 12. In a Report and Recommendation ("R&R"), Magistrate Judge Katherine Menendez concluded that Pedro's detention has become unconstitutional. R&R at 14–16 [ECF No. 25]. As a remedy, Magistrate Judge Menendez recommended that Pedro receive a bond hearing at which the Government bears the burden to show by clear and convincing evidence that he poses a risk of flight or a danger to the community. *Id.* at 16–17, 28–29. The Government filed objections to the R&R, and Pedro filed a response. Gov't Objs. [ECF No. 27]; Petr.'s Resp. [ECF No. 32].

The Parties' arguments raise several difficult legal questions that the Supreme Court and the Eighth Circuit have not yet answered. Under the law as it stands now, however, the better answer is to accept the R&R in its entirety. Pedro's extended detention violates due process. Before that detention may go on, the Government must justify it by clear and convincing evidence. The proper vehicle for that showing is a bond hearing before an immigration judge. Such a hearing must be held no more than 21 days after entry of this order.

I

A

Federal law has long allowed immigration officials to detain non-citizens (which the governing statutes refer to as "aliens") in a variety of circumstances. *See generally* Hillel R. Smith, Cong. Rsch. Serv., R45915, *Immigration Detention: A Legal Overview*

(Sept. 16, 2019). This case concerns one such circumstance: detention during the pendency of an alien's removal proceedings. In that context, one of two statutory provisions applies. The first provision, which sets out a general rule, places the alien's detention within the Attorney General's discretion. *See* 8 U.S.C. § 1226(a). In other words, the Attorney General "may" detain the alien for the duration of removal proceedings, or he "may" release the alien on bond or conditional parole. *Id.* § 1226(a)(1)–(2). Regulations allow an alien detained under § 1226(a) to seek a bond hearing, first before an officer from the Department of Homeland Security and then before an immigration judge. 8 C.F.R. §§ 236.1(c)(8) and (d)(1), 1003.19, 1236.1(c)(8) and (d)(1); *see Nielsen v. Preap*, 139 S. Ct. 954, 959–60 (2019). The alien can request a bond hearing "at any time before" receiving a final order of removal. 8 C.F.R. § 1003.19(a), 1236.1(d)(1). At the bond hearing, the alien has the burden to "convince the officer or immigration judge that he poses no flight risk and no danger to the community." *Preap*, 139 S. Ct. at 960 (citing *Matter of Guerra*, 24 I. & N. Dec. 37 (B.I.A. 2006)).[1]

The second provision, which is an exception to the general rule, makes detention during removal proceedings mandatory when the alien is "inadmissible" or "deportable" for specified reasons—usually because the alien has been convicted of a qualifying criminal offense. 8 U.S.C. § 1226(c). Aliens detained under § 1226(c) do not get bond hearings. Instead, the Attorney General "may" only release the alien if doing so is

---

[1]     After the first bond hearing, an alien can request a "subsequent bond redetermination," but "only upon a showing that the alien's circumstances have changed materially since the prior bond redetermination." 8 C.F.R. § 1003.19(e).

necessary for limited witness-protection purposes *and* the alien shows that he "will not pose a danger to the safety of other persons or of property and is likely to appear for any scheduled proceeding." *Id.* § 1226(c)(2).[2]

## B

This legal background helps explain how Pedro ended up where he is. In May 2017, after Pedro had been living in the United States for about twenty years, police in Woodbury, Minnesota, arrested him for a serious criminal-sexual-conduct offense. Pet. ¶¶ 1–2; Van der Vaart Decl. ¶¶ 4–5 [ECF No. 13]. Two days later, immigration officials took custody of Pedro but ultimately released him on bond (as he had not yet been convicted of an offense triggering mandatory detention). Van der Vaart Decl. ¶¶ 6–7, Ex. 1 at 1, 3, 5–6 [ECF No. 13-1].

Several months later, in September 2017, state officials formally charged Pedro with first-degree criminal sexual conduct. Pet., Ex. H at 7–10 [ECF No. 1-9]; *see* Minn. Stat. § 609.342, subd. 1(a). The case was delayed for over two and a half years because Pedro was twice found incompetent to stand trial and was civilly committed. Pet. ¶¶ 34–36, Ex. H at 11–15, Ex. K at 4 [ECF No. 1-12]. Eventually, the state court found him competent and he pleaded guilty. *Id.* ¶ 37. The state court sentenced him to 172 months in prison,

---

[2]    An alien detained under § 1226(c) may obtain a *Joseph* hearing—named for the Board of Immigration Appeals's ("BIA's") decision in *Matter of Joseph*, 22 I & N Dec. 799 (B.I.A. 1999)—for the limited purpose of raising a "nonfrivolous argument . . . that he was not properly included in a mandatory detention category." *Demore v. Kim*, 538 U.S. 510, 514 & n.3 (2003). As discussed below, Pedro concedes that he is properly included in a mandatory-detention category.

but it stayed execution of the sentence, gave him credit for time served, and ordered 25 years of supervised probation.  *Id.*, Ex. H at 20–23.

On May 4, 2020, the same day that Pedro was sentenced, Immigration and Customs Enforcement ("ICE") took him into custody.  *Id.*, Ex. I at 1–2 [ECF No. 1-10].  ICE alleged that he was removable for being present without admission or parole and for having committed an "aggravated felony."  *Id.* ¶ 39, Ex. I at 2; *see* 8 U.S.C. §§ 1101(a)(43)(A), 1227(a)(2)(A)(iii).   On September 24, 2020, an immigration judge granted Pedro's application for deferral of removal under the Convention Against Torture, finding it was more likely than not that he would be tortured if he were removed to Mexico.  *Id.* ¶ 40, Ex. L at 2 [ECF No. 1-13].  ICE immediately appealed this ruling to the BIA.  That appeal is fully briefed and awaiting decision.  Van der Vaart Decl. ¶ 12.

In the meantime, Pedro remains detained in the Kandiyohi County Jail (which has a contract with ICE).  The Parties agree that his criminal-sexual-conduct conviction is an "aggravated felony" within the meaning of 8 U.S.C. § 1227(a)(2)(A)(iii)—one of the qualifying offenses listed in 8 U.S.C. § 1226(c)(1)—so his detention is mandatory under the terms of § 1226(c).  He accordingly has not received a bond hearing at any point during the course of his 13-month detention.

## C

In December 2020, Pedro filed a petition for a writ of habeas corpus under 28 U.S.C. § 2241.  He alleged that his continued detention without a bond hearing violated the Due Process Clause of the Fifth Amendment.  Pet. ¶¶ 49–64.  For relief, he sought immediate release or, in the alternative, a bond hearing at which the Government would bear the

burden of proof by clear and convincing evidence. *Id.* ¶ 87 and p. 35. Magistrate Judge Menendez requested a response to the petition, ECF No. 3, and the Government filed one, opposing the petition on all fronts. ECF No. 12.

Relying on factors identified in *Muse v. Sessions*, 409 F. Supp. 3d 707 (D. Minn. 2018), and numerous other cases in this District, Magistrate Judge Menendez agreed that with Pedro that his detention violated due process. R&R at 14. Instead of recommending immediate release, however, Magistrate Judge Menendez concluded that he should receive a bond hearing before an immigration judge. *Id.* at 14–16. Finally, recognizing that multiple courts in this District had previously left the procedures for such bond hearings to immigration judges, Magistrate Judge Menendez concluded that, at the hearing, the Government should have the burden to show by clear and convincing evidence that Pedro's ongoing detention "is necessary to protect the public or prevent the risk of flight." *Id.* at 16–27.

In its objections, the Government argues both that Pedro's detention does not violate due process and that, if a bond hearing is granted, the Government should not have the burden to justify the detention. Gov't Objs. at 2–10. Pedro filed a response to the Government's objections, but he filed no objections of his own. ECF Nos. 28, 32.

II

The first question is whether Pedro's continued detention violates the Due Process Clause. Neither the Supreme Court nor the Eighth Circuit has provided a framework for answering this question. In *Demore v. Kim*, the Supreme Court held that mandatory detention under § 1226(c) is facially constitutional. 538 U.S. 510, 531 (2003). Throughout

the opinion, however, the Court made clear that it based its holding on its understanding that detention pending removal would generally only last a "brief" and "limited" period of time. *E.g.*, *id.* at 530 ("[T]he detention at stake under § 1226(c) lasts roughly a month and a half in the vast majority of cases in which it is invoked, and about five months in the minority of cases in which the alien chooses to appeal."). And Justice Kennedy, who provided a necessary fifth vote for the majority, separately expressed his view that the Due Process Clause might entitle an alien "to an individualized determination as to his risk of flight and dangerousness if the continued detention became unreasonable or unjustified." *Id.* at 532 (Kennedy, J., concurring). These features of *Demore* led a number of courts, faced with as-applied challenges to mandatory immigration detention and relying on the canon of constitutional avoidance, to read an implicit time limitation into § 1226(c). *See, e.g.*, *Diop v. ICE/Homeland Sec.*, 656 F.3d 221, 235 (3d Cir. 2011).

The Supreme Court rejected this interpretation of the statute in *Jennings v. Rodriguez*, holding that the plain text of § 1226(c) requires detention throughout an alien's removal proceedings and could not plausibly be read to contain an implicit time limitation. 138 S. Ct. 830, 846–47 (2018). Nonetheless, the Court explicitly "[did] not reach" any arguments concerning the constitutionality of prolonged detention under § 1226(c). *Id.* at 851.

Since *Jennings*, courts in this District and around the country have consistently recognized that "prolonged mandatory detention under § 1226(c), without an individualized determination that a detainee presents a risk of flight or a danger to the community, may violate the Due Process Clause[.]" R&R at 5 (collecting cases); *see Muse*,

7

409 F. Supp. 3d at 715. To decide whether a particular detention has become unconstitutional, courts in this District tend to follow six factors that Judge Schiltz identified in his persuasive *Muse* opinion:

> (1) the total length of detention to date; (2) the likely duration of future detention; (3) the conditions of detention; (4) delays of the removal proceedings caused by the detainee; (5) delays of the removal proceedings caused by the government; and (6) the likelihood that the removal proceedings will result in a final order of removal.

*Muse*, 409 F. Supp. 3d at 715; *see also, e.g.*, *Abdirizak Mohamed A. v. Brott*, No. 18-cv-3063 (ECT/HB), 2020 WL 1062913, at *2–3 (D. Minn. Mar. 5, 2020) (collecting cases).

In its objections, the Government does not meaningfully challenge the *way* the R&R applies these factors. Instead, it asserts that the factors should not come into play at all. According to the Government, such a test "was rejected by the Supreme Court in *Jennings* and is inconsistent with the Supreme Court's decision in *Demore*[.]" Gov't Objs. at 5. In its view, a detention is constitutional as long as it "still serves the purpose of Section 1226(c)," and habeas relief is justified only in "extraordinary cases"—for example, when the Government causes a delay in bad faith. *Id.* at 3–5.

These arguments have repeatedly been considered and rejected in similar cases. Whether a detention serves the purpose of § 1226(c) "is the ultimate question to be answered at a bond hearing, if one is ordered," so it cannot control whether due process requires a bond hearing in the first place. *Abdirizak Mohamed A.*, 2020 WL 1062913, at *3. Moreover, the Government's argument "read[s] too much into" *Jennings* and *Demore*. *Id. Jennings* is a statutory-interpretation case that explicitly reserves judgment on what

limits, if any, due process imposes on the duration of a § 1226(c) detention. *Jennings*, 138 S. Ct. at 851. And *Demore*, which involved only a facial challenge to § 1226(c), made "repeated, obvious references to the 'brief' and 'very limited' duration of most § 1226(c) detentions." *Abdirizak Mohamed A.*, 2020 WL 1062913, at *3. Given the lack of guidance those cases provide for the situation here, the *Muse* factors "represent a reasonable framework for balancing the due process interests at stake[.]" *Muse*, 409 F. Supp. 3d at 715 n.3 (quoting *Portillo v. Hott*, 322 F. Supp. 3d 698, 707 (E.D. Va. 2018)). Applying them is the "obvious intra-district trend," and there remains "no good reason to buck th[e] trend." *Abdirizak Mohamed A.*, 2020 WL 1062913, at *3.

Although the Government does not address the application of the *Muse* factors in its objections, those factors, considered together, show that Pedro's continued detention without a bond hearing violates due process. First, the length of Pedro's detention—now more than 13 months—favors granting relief because it far outstrips the brief period contemplated in *Demore*. Courts have found even shorter periods to be unreasonable under the Due Process Clause. *See* R&R at 8 (collecting cases). Second, the likely duration of Pedro's future detention is somewhat difficult to discern at this point, but it at least slightly favors relief. If Pedro prevails at the BIA, he will still be under a deferred order of removal, and it is not clear from the record that he would immediately be released. If the Government prevails, Pedro may seek review in the Eighth Circuit. *See Muse*, 409 F. Supp. 3d at 717 (noting that such review could take "another year"). Either way, some indeterminate period of future detention seems likely. Third, the conditions of Pedro's detention favor granting relief because, as the Parties agree, the county jail where he is

being held is "indistinguishable from penal confinement." *Id.*; *see Liban M.J. v. Sec'y of Dep't of Homeland Sec.*, 367 F. Supp. 3d 959, 964 (D. Minn. 2019). The fourth factor—delays caused by Pedro—weighs in favor of relief because the record shows only that he has pursued good-faith defenses to removal. *See Liban M.J.*, 367 F. Supp. 3d at 965 (explaining that such defenses "cannot undermine [a petitioner's] claim that detention has become unreasonable"). To be sure, the fifth factor weighs against relief because the Government has not engaged in any dilatory or otherwise unreasonable conduct. And the sixth factor is neutral because, like in *Muse*, the record does not provide a "sufficient basis to determine whether" Pedro is ultimately "likely to be removed." *Muse*, 409 F. Supp. 3d at 718. On balance, however, the scales tip toward Pedro. The Due Process Clause does not permit the Government to continue detaining him without an individualized determination that such detention is necessary.

III

Having determined that there is a constitutional violation, the remaining question is what to do about it. The Parties seem to agree that if any relief is warranted, it is a bond hearing before an immigration judge, not immediate release or an evidentiary hearing in federal court. That conclusion will not be revisited here. The primary dispute is over whether to impose a burden and standard of proof that will govern in Pedro's bond hearing and, if so, what that burden and standard should be. Pedro argues, and the R&R concluded, that it is appropriate for a federal court to reach this question, that the Government should bear the burden of proof, and that the standard should be clear and convincing evidence. Pet. ¶ 87; Petr.'s Resp. at 5–12; R&R at 25. The Government has essentially two responses.

10

First, it says that addressing these issues before any hearing has occurred would be premature. Gov't Objs. at 5–7. Second, it argues that placing the burden on Pedro to show that his release is warranted would be consistent with due process. *Id.* at 7–10.

## A

Several courts in this District have decided to leave all questions concerning the appropriate procedure for a bond hearing under § 1226(c) to the immigration judge in the first instance. *See, e.g.*, *Deng Chol A. v. Barr*, 455 F. Supp. 3d 896, 904–05 (D. Minn. 2020); *Bolus A.D. v. Sec'y of Homeland Sec.*, 376 F. Supp. 3d 959, 963 (D. Minn. 2019); *Muse*, 409 F. Supp. 3d at 718. These decisions express a prudential concern: when no bond hearing has yet occurred, it may be premature to "prospectively [] order an immigration judge to adhere to a specific standard of proof" because "no injury has occurred that is attributable to an incorrectly assigned burden and standard of proof." *Bolus A.D.*, 376 F. Supp. 3d at 963. On the other hand, at least one court in this District has addressed the burden issue before any bond hearing was held, concluding that "federal courts are best equipped to resolve questions of this nature." *Marco A. C.-P. v. Garland*, No. 20-cv-1698 (JRT/TNL), 2021 WL 1976132, at *5 (D. Minn. May 18, 2021) (citing *Santosky v. Kramer*, 455 U.S. 745, 755–56 (1982)).[3] And at least one other has addressed the burden issue after a petitioner won habeas relief, was ordered detained at a bond hearing, and then returned to federal court on a new habeas petition. *See Omar M. v. Garland*, No. 20-cv-1784

---

[3]     In *Marco A. C.-P.*, there was some legal ambiguity over whether the petitioner was detained under 8 U.S.C. § 1226 or § 1231(a). 2021 WL 1976132, at *2. That issue did not seem to have any impact on the court's decision to address the appropriate burden of proof at the bond hearing.

(NEB/BRT) (D. Minn.), ECF No. 27 at 12–15. Numerous other courts around the country have addressed the appropriate burden and standard of proof for yet-to-occur bond hearings without expressing any qualms about doing so. *See* R&R at 19–20 (collecting cases).

The concerns driving cases like *Deng Chol A.* and *Bolus A.D.* are well-taken. In the abstract, it makes sense to leave procedural questions like these to the immigration judge in the first instance. Doing so allows the parties to fully develop a record for later review, minimizes interference with agency processes, and avoids a judicial ruling that might prove unnecessary (if, for example, a petitioner is released under whatever procedures the immigration judge might choose to follow). *Cf. Kappos v. Hyatt*, 566 U.S. 431, 438–39 (2012) (describing the reasons that courts typically require the exhaustion of administrative remedies).

In this particular situation, however, punting the question would not serve these interests. First, requiring Pedro to raise his burden-of-proof argument to the immigration judge in the first instance would be "an exercise in futility." *Omar M.*, No. 20-cv-1784, ECF No. 27 at 15; *cf. Bartlett v. U.S. Dep't of Agric.*, 716 F.3d 464, 472–73 (8th Cir. 2013) (stating the general rule that a litigant need not exhaust administrative remedies when it would be futile to do so). As noted above, because § 1226(c) does not contemplate bond hearings, neither the statute nor its implementing regulations provide procedures for such hearings. It seems virtually certain—and the Government does not dispute—that an immigration judge asked to hold a bond hearing under § 1226(c) will fill this vacuum with the most analogous procedures available: those governing bond hearings under § 1226(a). In fact, as Magistrate Judge Menendez observed, immigration judges seem to "believe

themselves prohibited" by BIA precedent from considering other options.  R&R at 18; *see*

Pet., Ex. O at 3 & n.2; Br. of Amicus Curiae at 16–18 [ECF No. 9].  That's because BIA

precedent requires immigration judges to place the burden on the detainee in a bond hearing

under § 1226(a).  *See Matter of Guerra*, 24 I & N Dec. 37 (B.I.A. 2006); *Matter of Adeniji*,

22 I & N Dec. 1102, 1106 (B.I.A. 1999).  Second, addressing the burden of proof here

would not jump the gun.  In this context, determining the appropriate burden and standard

of proof is best understood, not as providing prospective relief for, or preventing, a future

injury, but as fashioning the appropriate constitutional remedy for an injury that has already

occurred—namely, an unconstitutionally prolonged, bond-hearing-less detention.  The

bottom line is that, under these specific circumstances, fully resolving Pedro's petition

requires determining what standards should govern at his bond hearing.

B

That leaves two questions: who should bear the burden of proof at Pedro's bond

hearing, and what standard of proof should apply?  Consistent with the "flexible" nature of

due process, courts determining the appropriate burden and standard of proof for a

particular setting should consider three factors: (1) the private interest at stake; (2) the "risk

of an erroneous deprivation of such interest"; and (3) the government's interests, including

any potential "fiscal and administrative burdens" imposed by a given procedure.  *Mathews*

*v. Eldridge*, 424 U.S. 319, 335 (1976); *see Addington v. Texas*, 441 U.S. 418, 425 (1979).

A standard of proof "serves to allocate the risk of error between the litigants and to indicate

the relative importance attached to the ultimate decision."  *Addington*, 441 U.S. at 423.

Magistrate Judge Menendez concluded that the Government should bear the burden to

13

show by clear and convincing evidence that Pedro's release "would present a danger to the community or a risk of nonappearance." R&R at 23–24. Under relevant Supreme Court precedent and persuasive circuit-court and district-court decisions, this is the better answer.

First, the private interest—Pedro's interest in avoiding prolonged and unwarranted confinement—is substantial. "[C]ivil commitment for any purpose constitutes a significant deprivation of liberty[.]" *Addington*, 441 U.S. at 425; *see Zadvydas v. Davis*, 533 U.S. 678, 690 (2001) ("Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects."). Because of the serious nature of the deprivation, courts generally assign to the Government the burden to justify detaining an individual. *See Addington*, 441 U.S. at 426, 432–33 (1979); *Foucha v. Louisiana*, 504 U.S. 71, 75–76 (1992); *cf. United States v. Salerno*, 481 U.S. 739, 751 (1987) (upholding a statute authorizing pretrial detention of criminal defendants). And the standard of proof generally must be more than a preponderance of the evidence—though how much more depends on the nature of the proceedings. *See Addington*, 441 U.S. at 427–31 (distinguishing between criminal and civil proceedings and requiring a showing of clear and convincing evidence in the civil-commitment context).

The substantial private interest in avoiding imprisonment informs how courts evaluate the second factor: the risk of an erroneous detention. Most civil proceedings involve fights over money or some other social or economic interest, and in that context, "it makes sense to allocate the risk of error evenly between the two parties." *German Santos v. Warden Pike Cnty. Corr. Facility*, 965 F.3d 203, 213 (3d Cir. 2020) (citing

14

*Addington*, 441 U.S. at 423).  When an individual's physical liberty is at stake, the balance shifts.  Even when the Government is pursuing legitimate interests, it must bear a heightened burden because "the possible injury to the individual is significantly greater than any possible harm to the state."  *Addington*, 441 U.S. at 427; *cf. Santosky v. Kramer*, 455 U.S. 745, 768 (1982) (applying the same principle in a case involving the termination of parental rights).

Finally, this case undoubtedly involves legitimate and weighty Government interests.  The Supreme Court has long recognized Congress's broad authority over immigration, *e.g.*, *Kleindienst v. Mandel*, 408 U.S. 753, 769–70 (1972), and, as a general matter, "[d]etention during removal proceedings is a constitutionally permissible part of th[e] process," *Demore*, 538 U.S. at 531.  Detaining an individual who is under threat of deportation helps ensure that the individual will appear at future proceedings and will not pose any danger to the community in the meantime.  And in Congress's judgment, it is particularly important to detain aliens who have been convicted of certain criminal offenses.  *Id.* at 517–18 (describing the legislative history of § 1226(c)).  Any decision concerning the appropriate burden and standard of proof must adequately account for these interests.[4]

---

[4]    The Government faults the R&R for not applying the three factors from *Mathews*. Gov't Objs. at 7.  But the R&R clearly had all three factors at top of mind.  It acknowledged Pedro's interest in avoiding unwarranted imprisonment, the Government's interest in ensuring the safety of the community and Pedro's appearance at future proceedings, and the need to properly allocate the "risk of error."  R&R at 23–27.  It also relied on case law citing and applying *Mathews*.  *See, e.g.*, *German Santos*, 965 F.3d at 213.

When asked to balance these factors, an overwhelming majority of courts have held that the Government must justify the continued confinement of an alien under § 1226(c) by clear and convincing evidence. *See, e.g.*, *German Santos*, 965 F.3d at 213–14; R&R at 19–20 (collecting cases). This reasonable conclusion is supported by the Supreme Court's treatment of civil detention in other contexts. The private interest in avoiding confinement is among the greatest there is. *See Zadvydas*, 533 U.S. at 690; *Addington*, 441 U.S. at 425. Section 1226(c)'s categorical approach to mandatory detention creates a risk that the statute will sweep up persons who do not, in fact, pose a risk of flight or danger to the community. Given the Government's legitimate interest in facilitating removal proceedings for criminal aliens, due process tolerates that risk for a reasonable period of time. *See Demore*, 538 U.S. at 529–31. Once the detention becomes so prolonged as to be unreasonable, however, it may not continue unless the Government shows that it is necessary. And at that point, it is no longer appropriate to allocate the risk of error evenly between the parties. *See German Santos*, 965 F.3d at 213–14.

Requiring the Government to meet this burden in Pedro's case is unlikely to add a significant administrative burden or undermine the Government's ability to vindicate § 1226(c)'s purposes. The Government and immigration courts are familiar with the clear-and-convincing evidence standard. *See, e.g.*, *Woodby v. Immigr. & Naturalization Serv.*, 385 U.S. 276, 286 (1966) (requiring this standard in deportation proceedings). And the Government already has easy access to information that is likely to bear on the question whether Pedro poses a risk of flight or danger to the community—most notably, his criminal and mental-health history and information concerning his behavior and conduct

during detention.  By contrast, assigning the burden to Pedro would put him in the difficult position of proving negatives.

The Government raises reasonable arguments that warrant discussion but do not change the result.  First, the Government points out that most courts assigning the clear-and-convincing-evidence burden to the Government in this context have relied on the Supreme Court's jurisprudence concerning the civil commitment of persons with mental illnesses.  According to the Government, the analogy between civil-commitment proceedings and immigration-detention proceedings is inapt.  *See* Gov't Resp. to Amicus Br. at 13–14 [ECF No. 14].  This is a fair point.  There are significant differences between the civil-commitment system and the immigration system.  *See generally* Mark Noferi, *Making Civil Immigration Detention "Civil," and Examining the Emerging U.S. Civil Detention Paradigm*, 27 J. Civ. Rts. & Econ. Dev. 533, 549–51 (2014) (describing some of these differences).  Moreover, Congress, "in the exercise of its broad power over immigration and naturalization, . . . regularly makes rules that would be unacceptable if applied to citizens." *Reno v. Flores*, 507 U.S. 292, 305–06 (1993) (internal quotation marks and citation omitted).  Nonetheless, the Supreme Court has made clear that the Due Process Clause protects non-citizens, *Zadvydas*, 533 U.S. at 693, and, on more than one occasion, the Court itself has cited cases from one context to support propositions in another.  *See id.* at 690 (citing *Foucha*, 504 U.S. at 80); *Addington*, 441 U.S. at 424 (citing

*Woodby*, 385 U.S. at 285). The implication is that, at least for the limited purpose of the addressing the due-process issues at play here, civil detention is civil detention.[5]

Next, the Government responds that, in bond hearings under § 1226(a), non-criminal aliens bear the burden to prove the lack of a flight risk or danger to the community. Gov't Resp. to Amicus Br. at 18. Adopting the R&R's conclusion, it says, would put criminal aliens in a more favorable position than non-criminal aliens. *Id.* At least one circuit court has found this reasoning persuasive. *See Sopo v. U.S. Att'y Gen.*, 825 F.3d 1199, 1219–20 (11th Cir. 2016), *vacated*, 890 F.3d 952, 953 (11th Cir. 2018) (per curiam). But there are problems with the Government's argument. Non-criminal aliens subject to discretionary detention under § 1226(a) enjoy a crucial procedural protection that criminal aliens do not. They can obtain a bond hearing immediately at the outset of their detention. *See* 8 C.F.R. §§ 1003.19(a), 1236.1(d)(1). Then, if they are denied release, they may seek additional bond hearings if they can show that facts have changed. *Id.* § 1003.19(e). The argument also presumes that the bond hearing procedures under § 1226(a) remain constitutional even when an alien's discretionary detention becomes unreasonably prolonged. At least one circuit court has held that they do not. *See Velasco Lopez v. Decker*, 978 F.3d 842, 845–46 (2d Cir. 2020) (ordering a new bond hearing for an alien unconstitutionally detained under § 1226(a) at which the government would have to bear

---

[5]    The Government also argues that *Addington* and similar cases involved indefinite civil commitment, while detention under § 1226(c) has a definite end date—*i.e.*, a final removal order or a final decision favorable to the alien. This distinction works well in theory, but it misses a crucial practical point: unconstitutional § 1226(c) detentions are already unreasonably prolonged and are unlikely to have an identifiable end date in sight.

the burden of proof by clear and convincing evidence).  In short, the comparison to non-criminal aliens is not as significant as the Government suggests.

Finally, the Government points to the Eighth Circuit's decision in *Mohamed v. Gonzales*, 477 F.3d 522, 526 (8th Cir. 2007), which it says "generally affirm[s] the adequacy of the administrative process" available to ICE detainees.  Gov't Objs. at 8. *Mohamed* does not have anything to say about the issues in this case.  There, an alien petitioned for review of a final removal order, challenging provisions of the REAL ID Act that eliminated the availability of the writ of habeas corpus and required a court of appeals to limit its review to the "administrative record on which the order of removal is based." *Id.* at 525 (citing 8 U.S.C. § 1252(a)(5), (b)(4)(A)).  According to the petitioner, those provisions violated the Suspension Clause of the Constitution because they did not leave him with an adequate remedy to test the legality of his detention.  *See id.* at 525–26.  The court rejected this argument, holding that a different provision of the statute, 8 U.S.C. § 1252(a)(2)(D), provided "a remedy as broad in scope as a habeas petition" because it allowed a court to "review all constitutional claims and questions of law in the removal order." *Id.* at 526.  In other words, the case did not address what procedures the Constitution may require in a bond hearing after an unconstitutionally prolonged detention under § 1226(c).  It did not involve a detention under § 1226(c) at all.

In sum, considering the unsettled nature of the legal questions in this case, the available legal authorities, and the interests at stake, the better answer is that Pedro is entitled to a bond hearing in immigration court at which the Government must justify his

ongoing detention. To do so, the Government must show by clear and convincing evidence that Pedro poses either a risk of flight or a risk of danger to the community.[6]

**ORDER**

Based on the foregoing, and on all the files, records, and proceedings in the above-captioned matter, **IT IS ORDERED** that:

1.     Respondents' Objections to the Report and Recommendation [ECF No. 27] are **OVERRULED**.

2.     The Report and Recommendation [ECF No. 25] is **ACCEPTED**.

3.     The Petition for a Writ of Habeas Corpus [ECF No. 1] is **GRANTED IN PART** and **DENIED IN PART** as follows:

   a.   Petitioner's requests for immediate release, for a bond hearing in this Court, and for an order requiring an immigration court to consider his ability to pay are **DENIED**.

   b.   Within 21 days of this Order, Respondents must ensure that Petitioner receives an individualized bond hearing before an immigration judge. If no bond hearing occurs, then Petitioner must be released absent further order of this Court.

---

[6]     Pedro also requested an order directing the immigration judge to consider his ability to pay when deciding whether he should be released on bond. Pet. at 35 ¶ 7. Magistrate Judge Menendez recommended denying this request because BIA precedent governing bond hearings under § 1226(a) already seems to require immigration judges to consider a detainee's ability to pay. R&R at 27–28. Neither Party objects to this recommendation, and it will be adopted.

    c.  At the bond hearing, the Parties must be allowed to present evidence and argument concerning whether Petitioner is a danger to the community and whether he is likely to flee if he is not detained.  The immigration judge must place the burden of proof on the Government, and continued detention must only be authorized if the Government meets its burden with clear and convincing evidence.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated:  June 14, 2021

s/ Eric C. Tostrud
Eric C. Tostrud
United States District Court